**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ROSA CAROLINA BERMUDEZ MORENO,

        Plaintiff,

v.                                    No. 2:21-cv-0995 JB/DLM

GINA M. RAIMONDO, Secretary,
Department of Commerce,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff Rosa Carolina Bermudez Moreno worked for the United States Census Bureau in 2020. Moreno, who is Jewish, alleges that she was subject to discrimination and a hostile work environment on the basis of her religion, retaliated against when she complained of the mistreatment, and ultimately constructively discharged. Defendant Gina M. Raimondo, Secretary of the Department of Commerce moves for summary judgment. Having considered the parties' briefs, the record, and the relevant law, I recommend[1] the Court **GRANT** Defendant's motion and **DISMISS** this lawsuit.

## I.    Factual and Procedural Background[2]

### A.    Incident in January 2020

Moreno applied to work for the United States Census Bureau (USCB). (*See* Doc. 89-A at 68:2–5.) Moreno is Jewish and her religious practices require that she wear a headscarf in public.

---

[1] United States District Judge James Browning entered an Order of Reference on April 13, 2023, referring the case to the undersigned magistrate judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 37.)

[2] In accordance with summary judgment standards, the Court recites all admissible facts in a light most favorable to Moreno. Fed. R. Civ. P. 56; *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court recites only that portion of the factual and procedural history relevant to this motion.

(*See id.* at 45:9–11, 63:8–64:8.) During the USCB onboarding process in January 2020, Moreno spoke with an employee in the Las Cruces Area Census Office (ACO) and told them that she had applied, she is "an observant Jew" who wears a head covering, and she does not work on the Sabbath or Jewish holidays. (*See id.* at 95:7–97:11, 102:18–20.) Moreno testified that the employee told her, "You can't work with the head covering on unless you have a doctor's note." (*Id.* at 97:12–13.) Moreno explained that she does not wear her headscarf for medical reasons, but for religious reasons. (*Id.* at 97:14–17.) The employee insisted that she needed a doctor's note or she could not work for the USCB. (*See id.* at 97:18–19.)

Moreno contacted several doctors' offices, all of whom told her they would not provide a note for a headscarf. (*See id.* at 102:25–103:9.) Moreno testified that she called the ACO again and said she could not find a doctor to write a note, and the person at the office told her again that she "couldn't work if [she] didn't bring the letter." (*Id.* at 105:6–106:11.) Moreno eventually visited Gindhar Anireddy, M.D., who agreed to write a note if Moreno paid for a physical exam. (*See id.* at 103:12–104:1, 112:19–22; *see also* Doc. 88-E.) Moreno paid $90 for the exam. (*See* Doc. 89-A at 112:19–24.) Dr. Anireddy provided a note documenting that Moreno underwent a physical examination on January 15, 2020. (Doc. 88-E.) The note stated that her "scalp and hair [were] covered, upon asking she said she could not remove head cover due to religious reasons." (*Id.*)

Moreno brought the note with her when she was photographed for her identification badge, but the person who took her picture refused to accept the note and advised her to give it to the ACO. (*See* Doc. 89-A at 108:4–14.) Moreno testified that she called the ACO and talked to an employee named Cesar, who instructed her to email the doctor's note to him and he would "take care of it." (*See id.* at 108 at 24–109:7.) Moreno testified that she emailed the note to Cesar, but

she never heard anything else from him.[3] (*See id.* at 109:4–110:11.) No supervisor or employee at the USCB ever directed Moreno to take her headscarf off at work or asked for a doctor's note again. (*See id.* at 110:12–111:1.) Further, Defendant provides evidence that neither the United States Department of Commerce nor the USCB has "a policy or guideline that prohibits wearing a head covering[,]" and if a USCB employee told Moreno that she was required to obtain a doctor's note for this purpose, such an instruction "does not align with the policies and guidelines of the Department of Commerce." (*See* Doc. 88-F.)

### B.    Incidents Between May 26–31, 2020

The USCB appointed Moreno to work temporarily as an Enumerator for the Decennial Census for two periods of time relevant to this lawsuit: first on March 6, 2020, "not to exceed May 1, 2020[,]" and again on May 1, 2020, "not to exceed June 26, 2020." (*See* Doc. 88-B at 2.) Enumerators' duties included locating and interviewing respondents in Decennial Census households. (*Id.*) Enumerators were "assigned to different Area Census Offices" but "conduct[ed] their work in the field or from their own residence." (*Id.*)

Moreno worked on an hourly basis, created her own work schedule, and was allowed to choose the days she would not work. (*See id.*; Doc. 89-A at 87:2–10.) Moreno's religion does not allow her to work on the Sabbath or other Jewish high holidays. (*See* Doc. 89-A at 66:17–23.) As a result, she marked herself unavailable to work on Saturdays (for the Sabbath) and on May 31, 2020 (for the Feast of Shavuot, a Jewish holiday). (*See id.* at 144:19–145:14.)

Moreno asserts that Census Field Supervisor Ann Shanklin discriminated against her. (*See* Docs. 88-C at 1–2.) Moreno complains of three specific interactions with Shanklin: the first on May 26, 2020; the second on May 29, 2020; and the third on May 31, 2020.

---

[3] Neither party provides evidentiary proof of this email. Moreno stated at her deposition that she was looking for the phone from which she accessed the account she used to email Cesar. (*See* Doc. 89-A at 109:10–13.)

**May 26, 2020**: Moreno called Shanklin to ask for help with a work assignment. (*See* Doc. 89-A at 116:20–117–23.) Moreno alleges that Shanklin was angry and rude and told Moreno not to bother her. (*See id.* at 117:23–119:6.) Shanklin also said that Moreno needed to work more hours. (*Id.* at 119:7–8.) Moreno explained that she could not work any more hours than she already was because she had "a job[,] . . . a husband[,] . . . other things[, and] . . . school." (*See id.* at 119:9–13.) Shanklin responded, "I don't even want you on my team. Just mark yourself unable to work."[4] (*See id.* at 120:18–19.) Moreno called Census Field Supervisor Robert Dysinger, her second direct supervisor, and told him about the conversation with Shanklin. (*See id.* at 130:21–131:5; *see also* Doc. 88-C at 1.) Dysinger advised Moreno *not* to mark herself unable to work. (*See* Doc. 89-A at 131:6–10.) Moreno did not mark herself "unable to work" as Shanklin directed. (*See id.* at 130:19–21.)

**May 29, 2020**: Shanklin instructed Moreno to pick up supplies on the Sabbath. (*See id.* at 133:13–14.) Moreno responded that she could not pick up supplies on a Saturday but offered to get them on Monday or from another employee. (*Id.* at 133:15–19.) Moreno called Dysinger about the communication, and he had the supplies delivered to her. (*See id.* at 134:18–21, 137:10–15.) Moreno was never required to travel on the Sabbath. (*Id.* at 137:2–4.)

**May 31, 2020**: Shanklin called Moreno on the High Feast of Shavuot holiday. (*See id.* at 138:5–12.) Moreno did not answer the phone, and Shanklin left a voicemail. (*Id.* at 138:5–12, 139:2–11.) In the voicemail, Shanklin laughed and said, "I cannot call you on a day that you're off. But you know, I'm calling you because it's my job. I'm your supervisor, and I have to call

---

[4] Moreno explained that when an employee marked themselves "unable to work, it means that you are able to work but you're just not going to work . . . . Kind of like 'I'm here, but I'm not doing it . . . .'" (*See* Doc. 89-A at 118:20–24.) Alternatively, an employee could mark themselves "unavailable to work," which means that "you're not available to work, and nobody will bother you . . . ." (*See id.* at 119:1–3.)

you."[5] (*Id.* at 138:15–20.) Moreno asserts that she previously told Shanklin that May 31 was a Jewish holiday, and she would not work on that day. (*See id.* at 140:17–24.)

Moreno contacted Teresa McLain, the Lead Census Field Manager and Moreno's second-line supervisor, about the voicemail. (*See* Docs. 88-C at 1–2; 88-J at 1.) McLain told Moreno that "she would deal with Ms. Shanklin, and that" it was inappropriate for Shanklin to call Moreno on the Sabbath or Jewish holidays. (*See* Doc. 88-C at 2.) McLain directed Moreno not to contact Shanklin anymore and informed her that Dysinger alone would continue as Moreno's direct supervisor. (*See id.*) Moreno never talked to Shanklin again. (*See* Doc. 89-A at 143:23–144:3.)

### C.    Incidents Between June 2–10, 2020

On June 2, 2020, Moreno emailed McLain and asked for questionnaire packages. (*See* Doc. 88-J at 1.) McLain responded and stated she was "a bit confused" because Moreno had "only completed one assignment since [USCB] resumed operations." (*See* Doc. 88-J-1.) McLain noted that Moreno "still ha[d] cases that [had] never been opened that were assigned to [her] back in March." (*Id.*) McLain asked Moreno where her supplies had gone. (*Id.*) Moreno testified that she had previously enjoyed a cordial relationship with McLain, but she interpreted McLain's response to her email as disrespectful. (*See* Doc. 88-C at 2.) McLain avers that her "response was not motivated to any extent by Ms. Moreno[']s claims of harassment involving Ms. Shanklin." (Doc. 88-J at 1.) Rather, her response was centered on clarifying "Moreno's need for additional supplies given her inability to timely process her assignments." (*Id.*)

After this exchange, McLain reassigned nine of Moreno's eleven cases. (*See id.*; *see also* Doc. 88-C at 2.) McLain explains that "[a]s a Census Field Supervisor, [she] routinely reassigned cases if an Enumerator was not working his or her cases quickly enough to ensure that the Las

---

[5] Moreno testified that she saved the voicemail, but it is on a phone she does not currently possess. (*See* Doc. 89-A at 139:19–140:3.)

Cruces AOC would meet its deadlines." (Doc. 88-J at 1.) McLain "believed Ms. Moreno was not working her cases quickly enough based on [her] review of her assigned cases, and [McLain] reassigned her cases for that reason." (*Id.*) Her "decision was not motivated [by] Ms. Moreno's claims of harassment involving Ms. Shanklin." (*Id.*)

On June 4, 2020, Moreno asked Dysinger for the contact information of someone who could help her resolve her issues. (*See* Doc. 88-C at 2.) She also unsuccessfully attempted to contact other individuals and offices within the USCB.[6] On June 10, 2020, Moreno sent a resignation letter to Dysinger. (*Id.* at 3.) Moreno alleges that she "felt forced to resign based on" the alleged discrimination and retaliation. (*See id.*)

## D.    Incidents Post-Dating Moreno's Resignation

After Moreno resigned, she received at least two phone calls on the Sabbath from the ACO. (*See id.*; *see also* Doc. 89-A at 158:9–159:21.) She testified that the caller asked her if she wanted to return to work with the USCB. (Doc. 89-A at 158:19–21.) Moreno was unsure whether the caller knew she was Jewish. (*Id.* at 159:22–24.) Craig Buckingham, the Area Census Office Manager with the ACO, explains that Moreno received phone calls "because she was on the hiring list." (*See* Doc. 88-I at 1–2.) He states that it is "standard practice" for ACO staff to "contact all of the employees on the hiring list[,]" and such "calls were not intended to harass [Moreno]." (*Id.* at 2.) Further, the "staff who called [Moreno] would not have been aware that [she] observed the Sabbath on Saturdays." (*Id.*)

Finally, Moreno asserts that "[o]n June 18, 2020, [she] was denied access to a copy of her resignation letter and SF-8 form." (*See* Doc. 88-D at 1; *see also* Doc. 61 at 3.)

---

[6] Moreno alleged in a declaration she submitted to the Equal Employment Opportunity Office that USCB employees were "hiding" information "to discourage [her] from filing a complaint and to delay such filing." (*See* Doc. 88-C at 2.) She does not, however, provide any evidence in support of this contention and I do not consider it in analyzing the motion.

"On June 11, 2020, [Moreno] initiated contact with the [United States Department of Commerce's] Equal Employment Opportunity (EEO) Office." (Doc. 88-D at 2.) She filed a formal EEO complaint on July 24, 2020. (*See id.*) On July 20, 2021, the EEO issued a Final Agency Decision Without a Hearing, finding no discrimination. (*See id.* at 1, 3.)

Moreno filed her original pro se complaint in this Court on October 14, 2021, and her First Amended Complaint on February 28, 2024. (Docs. 1; 61.) She asserts three claims. In Counts I and II, she alleges she was subjected to religious discrimination, a hostile work environment, and constructive discharge because: (1) she was required to provide a doctor's note for her headscarf; (2) Shanklin instructed her to mark herself "unable to work"; (3) Shanklin directed her to travel on the Sabbath and left a voicemail on a Jewish holiday mocking her; (4) Shanklin delayed the delivery of supplies; and (5) ACO staff contacted her on the Sabbath after she resigned. (Doc. 61 at 2.) In Count III, Moreno asserts a claim for retaliation on the basis that: (1) McLain treated her disrespectfully and reduced her assignments; (2) USCB staff did not provide her with contact information for the regional office; and (3) she was denied access to a copy of her resignation letter and an SF-8 form.[7] (*See id.*)

## II.    Legal Standards

### A.    Summary Judgment Standard of Review

A party who moves for summary judgment "bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *See Tanner v. San Juan Cnty. Sheriff's Off.*, 864 F. Supp. 2d 1090, 1106 (D.N.M. 2012) (quoting *Bacchus Indus., Inc. v.*

---

[7] Count I contains an allegation that Shanklin admitted to "cheating the system . . . by falsifying the amount of miles [she] was driving . . . ." (Doc. 61 at 2.) Moreno fails to show how this allegation relates to her Title VII claims (*see, e.g.*, Doc. 93), and I find the allegation does not create a genuine issue of fact relevant to her claims. Count III contains a claim that "Shanklin was taking our assignment[s] to work herself." (Doc. 61 at 3.) Moreno provides no evidence in support of this allegation, and I will not consider it in analyzing the motion.

*Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).

Rule 56(c) provides that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). The respondent may not simply "rest on mere allegations or denials of [her] pleadings." *Anderson*, 477 U.S. at 259; *see also Carpenter v. Boeing Co.*, 456 F.3d 1183, 1192 (10th Cir. 2006) ("Neither mere assertions and conjecture, nor the existence of a scintilla of evidence in support of the nonmovant's position, is sufficient to show a genuine issue of material fact . . . .") (quotation marks and citations omitted). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Colony Nat'l Ins. Co. v. Omer*, No. 07-2123-JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008) (citing Fed. R. Civ. P. 56(e); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006)). "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape

summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted). Rather, "an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Carpenter*, 456 F.3d at 1192 (quotation omitted).

    **B.**    **Pro Se Litigant Standard**

Moreno's "pro se . . . pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (internal citation omitted)). The Court may not, however, "serv[e] as the litigant's attorney in constructing arguments and searching the record." *Id.* (citation omitted).

Moreno complains that Defendant "does not provide evidence she has that shows Plaintiff was forced to leave her work because of Defendant's harassment and retaliation, such as written communications with Supervisor Dysinger" or "Plaintiff's e-mail to Dallas Regional Manager, Michael Anaya . . . ." (Doc. 93 at 1.) Yet it is not Defendant's burden to prove Moreno's case. Indeed, Moreno wholly fails to support her position with *any* reference to record evidence. (*See generally*, Doc. 93.) Rather, she responds by pointing to the allegations in her First Amended Complaint and by accusing Defendant of lying. (*See id.*) On this basis alone, I recommend the Court grant summary judgment in favor of Defendant on all Moreno's claims. Still, I have analyzed each of the claims on the merits.

**III.**    **Moreno's religious discrimination claims fail.**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015) (quoting

42 U.S.C. § 2000e-2(a)(1)). Moreno may prevail on a religious discrimination claim "through either direct or indirect evidence." *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (citation omitted). "If there is no direct evidence of discrimination, the *McDonnell Douglas* . . . burden-shifting framework is used to indirectly prove intentional discrimination." *Orr*, 417 F.3d at 1149 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Here, Moreno offers no direct evidence of discrimination.

Under the *McDonnell Douglas* three-step analysis, a plaintiff must "first prove a prima facie case of discrimination." *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137 (10th Cir. 2024) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)). To make out a prima facie case of religious discrimination, Moreno "must present evidence of [her] membership in a protected class, an adverse employment action, and the existence of circumstances giving rise to an inference of discrimination." *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1200 (10th Cir. 2021) (citations omitted). If Moreno "can make out a prima facie case of discrimination, the burden shifts to the defendant to demonstrate a legitimate non-discriminatory reason for the adverse employment action." *Orr*, 417 F.3d at 1149 (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000)). "If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext." *Id.* (citing *Kendrick*, 220 F. 3d at 1226).

### A.    Moreno did not timely exhaust the claim based on the requested doctor's note.

Moreno's doctor's note claim is untimely and should be dismissed without prejudice. "'[B]efore a federal civil servant can sue her employer for discrimination,' she must, among other things, 'initiate contact with an Equal Employment Opportunity counselor at her agency within 45 days of the date of the matter alleged to be discriminatory.'" *Poncho-Alderete v. U.S. Gov't*, No.

CV 22-153 KK/JMR, 2024 WL 2132394, at *9 (D.N.M. May 8, 2024) (quoting *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020)) (citing 29 C.F.R. § 1614.105(a)(1)). Critically, "'each discrete incident' of alleged discrimination or retaliation 'constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted.'" *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)). "This regulatory exhaustion requirement is not a jurisdictional prerequisite for suit but is a claims-processing rule that the employer may raise as an affirmative defense." *Hickey*, 969 F.3d at 1118 (citations omitted).

Defendant argues that the discrimination claim based on the requested doctor's note fails because Moreno "failed to timely exhaust the claim administratively." (Doc. 88 at 15.) Defendant raised this failure as an affirmative defense in its answer. (*See* Doc. 78 at 5.) The record shows that the USCB employee asked Moreno to obtain a doctor's note in January 2020 (*see* Doc. 89-A at 95:7–97:11), and Moreno first contacted an EEO counselor on June 11, 2020, more than 45 days later (*see* Doc. 88-D at 2). The EEO noted in its decision that the doctor's note claim was untimely and considered it only as "background evidence." (*See* Doc. 88-D at 2.)

Moreno responds that she "stated before [t]his Court that EEO made initial contact with [her] when another employee notified EEO of Defendant's abuse towards [Moreno]." (Doc. 93 at 2.) If Moreno is arguing that she timely contacted the EEO, she cites no evidence in support of her position and her argument fails. (*See id.*) Moreno also asserts that "it happened during the Covid pandemic and everything was taking way longer than usual." (*Id.*) To the extent Moreno's response could be construed as an argument that the time limit should be equitably tolled due to the COVID pandemic, this argument also fails, as Moreno presents no evidence to show that she was prevented from contacting EEO officer between January 2020 and June 11, 2020, due to the pandemic.

Moreover, "[e]quitable tolling 'is appropriate only where the circumstances of the case rise to the level of active deception . . . where a plaintiff is lulled into inaction by her past employer, state or federal agencies, or the courts.'" *Hueston Green v. Garland*, 716 F. Supp. 3d 1125, 1139 (D.N.M. 2024) (quoting *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). "Equitable tolling will not apply 'unless an employee's failure to timely file results from either a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" *Id.* (quoting *Hulsey*, 43 F.3d at 557). Moreno offers no argument or evidence to show active deception or deliberate design.

In short, Moreno fails to establish that she contacted the EEO within 45 days of the request for the doctor's note or that equitable tolling is appropriate. Thus, I recommend the Court dismiss this claim without prejudice for failure to properly exhaust administrative remedies. *See Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1166 (10th Cir. 2018) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice.") (quotation omitted).

**B.      Moreno's remaining discrimination claims fail because she does not demonstrate an adverse employment action.**

Moreno fails to establish a prima facie case of discrimination with respect to her remaining claims, which include: (1) Shanklin's directive to mark herself "unable to work"; (2) Shanklin's instruction to drive on the Sabbath; (3) Shanklin's rude voicemail; (4) the delay in receiving supplies; and (5) ACO staff's calls on the Sabbath. (*See* Doc. 61 at 2.) To make out a prima facie claim, Moreno must show she is in a protected class, she was subjected to an adverse employment action, and there is an inference of discrimination. *See Ibrahim*, 994 F.3d at 1200. Defendant argues that Moreno cannot demonstrate an adverse employment action. (*See* Doc. 88 at 18–20.)

The Tenth Circuit broadly defines adverse employment action to mean "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits." *Orr*, 417 F.3d at 1150 (quoting *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003)). Having reviewed the record evidence, it is clear that Moreno fails to demonstrate she suffered any adverse employment action as a result of the alleged discrimination.

With respect to Shanklin's instruction to mark herself unable to work, Defendant asserts that "Shanklin's directive was rescinded before [Moreno] sustained any harm." (Doc. 88 at 18 (citation omitted).) Moreno does not respond to this point. (*See* Doc. 93.) The record shows that Dysinger advised Moreno *not* to mark herself unable to work. (*See* Doc. 89-A at 131:6–10.) Moreover, Moreno admitted that she did not mark herself "unable to work" as Shanklin directed. (*See id.* at 130:19–21.) Consequently, she did not suffer an adverse action due to Shanklin's instruction.

Regarding Shanklin's direction to drive on the Sabbath, Moreno testified that she told Shanklin she could not pick up supplies on Saturday but could get them on Monday or from another employee. (*See id.* at 133:15–19.) Moreno called Dysinger about the communication, and he had the supplies delivered to her. (*See id.* at 134:18–21, 137:10–15.) In her response, Moreno asserts that Shanklin "gave [her] no option other than traveling to pick up supplies on the Sabbath . . . ." (Doc. 93 at 1.) While Shanklin may not have given Moreno another option, Moreno does not dispute the fact that she was never required to travel on the Sabbath and thus fails to establish she suffered an adverse action. (*See id.*; *see also* Doc. 89-A at 137:2–4.)

Similarly, Moreno fails to demonstrate that she suffered an adverse employment action as a result of Shanklin's rude voicemail. (*See* Doc. 93.) Indeed, as soon as Moreno contacted McLain about the voicemail, McLain removed Shanklin as Moreno's supervisor and Moreno never talked to Shanklin again. (*See* Docs. 88-C at 2; 89-A at 143:23–144:3.)

Moreno's claim regarding a delay in delivering supplies is unclear. She alleges in the First Amended Complaint that "Shanklin . . . delayed giving me needed supplies to work in the field." (Doc. 61 at 2.) Defendant submits evidence that shows: (1) Moreno texted Dysinger on June 2, 2020, and stated that she was "not yet running low but will need a box of questionnaires in the next couple of days or so" (Doc. 88-G); and (2) Moreno stated in her EEO declaration that on June 3, 2020, . . . Dysinger sent someone" to meet her with supplies (Doc. 88-C at 2). Moreno does not adequately respond to Defendant's argument, noting only that "Defendant lies saying the supplies were delayed, when Plaintiff presented the fact that Shanklin, knowing Plaintiff was a Jew and didn't work on the Sabbath, continued targeting Plaintiff, and gave Plaintiff no option other than traveling to pick up supplies on the Sabbath . . . ." (Doc. 93 at 1.) Moreno fails, however, to offer evidence to show she suffered an adverse employment action by any delay in receiving supplies.

Finally, regarding the claim that ACO staff contacted her on the Sabbath after she resigned, Defendant contends that because Moreno "was not employed by the agency when the calls were placed[,] . . . the terms or conditions of her employment could not be altered." (Doc. 88 at 20 n.3 (citing *Milam v. Pafford EMS*, 729 F. App'x 632, 637 (10th Cir. 2018)).) In response, Moreno fails to argue or establish that the calls "constitute[d] a significant change in employment status . . . [or] benefits." *See Orr*, 417 F.3d at 1150 (quotation omitted). Further, the Tenth Circuit has "liberally define[d] the phrase 'adverse employment action'" to mean conduct that "causes 'harm to future employment prospects.'" *See Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004) (quotations omitted). Moreno submits no evidence to show that the ACO's Saturday phone calls caused any harm to her future employment prospects, and her claim fails under this definition as well.

In sum, Moreno fails to establish a prima facie claim of discrimination on any of the alleged incidents, as she submits no evidence to prove that she suffered an adverse employment action. Accordingly, I recommend the Court dismiss these claims with prejudice.

**III.    Moreno's hostile work environment claim fails.**

Moreno brings a claim for "harassment" in Count II, which Defendant treats and the undersigned construes as a hostile work environment claim. (*See* Docs. 61 at 2; 88 at 19.) To survive summary judgment, Moreno "must show: "(1) [she] is a member of a protected group; (2) [she] was subject to unwelcome harassment; (3) the harassment was based on [religion]; and (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of [her] employment and created an abusive working environment." *See Payan v. United Parcel Serv.*, 905 F.3d 1162, 1170 (10th Cir. 2018) (quotation omitted). Defendant argues that Moreno's claim fails on the fourth element. (*See* Doc. 88 at 19–20.)

Defendant contends that Moreno's "claim is based on two incidents"—Shanklin's demand that Moreno drive on the Sabbath and her rude voicemail. (*Id.* at 20.) Defendant did not consider Moreno's allegation that ACO staff called her on the Sabbath after she quit working for the USCB, because  "the terms or conditions of her employment could not be altered." (*Id.* at 20 n.3.) In her response brief, Moreno fails to formulate a reasoned argument to establish that the hostile work environment claim is based on additional incidents; rather, she merely states that "Defendant is leaving out a lot of evidence" and references an email to a regional manager that is not in the record. (*See* Doc. 93 at 1.) Nevertheless, construing her pleadings liberally, I considered all Moreno's allegations in analyzing her hostile work environment claim. *See, e.g., West v. N.M. Tax'n & Revenue Dep't*, 757 F. Supp. 2d 1065, 1093 (D.N.M. 2010) (noting that hostile work environment claims span conduct that occurs over time).

Defendant argues that Moreno's allegations are not severe or pervasive enough to constitute a hostile work environment. (*See* Doc. 88 at 21.) Defendant compares the circumstances here to those in *Milam v. Pafford EMS*, 729 F. App'x 632 (10th Cir. 2018). (*See* Doc. 88 at 21.) There, the plaintiff (Milam) alleged he was subject to "a hostile work environment based on his Jewish faith and Israeli origin." *Id.* at 637. His coworkers informed Milam that they heard others referring to him "as a 'f---ing Jew' and discussing how to get him fired," and "his supervisor once said 'don't pull the Jew card on me' in discussing Milam's availability to work on the Sabbath." *Id.* The Tenth Circuit found these incidents were insufficient to withstand summary judgment "because 'a few isolated incidents of [religious] enmity or sporadic [religious] slurs' do not demonstrate pervasive or severe harassment." *Id.* (quoting *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005)) (citing *Faragher v. City of Boca Raton*, 425 U.S. 775, 788 (1998)).

The same is true here. The only incidents that were arguably based on Moreno's religion include the three encounters with Shanklin and the doctor's note incident. The incidents with Shanklin occurred relatively close in time to one another, but they are insufficient to constitute a "steady barrage of opprobrious [discriminatory] comments." *See Witt v. Roadway Exp.*, 136 F.3d 1424, 1432 (10th Cir. 1998) (quotation and citation omitted). Nor do they rise to the level of severity that the comments in *Milam* did. Critically, Moreno has not shown that Shanklin's conduct was so severe or pervasive that it "altered a term, condition, or privilege of [Moreno's] employment . . . ." *See Payan*, 905 F.3d at 1170 (quotation omitted). Moreno admitted that she never had to drive or work on the Sabbath or on holidays, she never marked herself unable to work, and McLain removed Shanklin as Moreno's supervisor after the third incident. (*See* Docs. 88-C at 2; 89-A at 130:19–21, 137:2–4, 143:23–144:3.)

The doctor's note incident, if properly exhausted, may have constituted a discrete incident of discrimination. It is not enough, however, even in the context of the other allegations, to support a hostile work environment claim. While egregious, the request for the doctor's note was a one-time incident that was not physically threatening or humiliating, nor did it interfere with Moreno's work performance. *See Payan*, 905 F.3d at 1170 (noting that courts "consider[] such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance") (quotation omitted). Only an event that is "extraordinarily severe" is enough to "qualify as an adverse employment action." *See Gerald v. Locksley*, 849 F. Supp. 2d 1190, 1235 (D.N.M. 2011) (quotations omitted). A single incident must "constitute an 'intolerable alteration' of the plaintiff's working conditions," *id.* (quoting *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)), "so as to substantially interfere with or impair [her] ability to do [her] job," *id.* (citing *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 59 (2d Cir. 2004)). The Tenth Circuit has found discrete or isolated "conduct sufficiently severe to overcome summary judgment in only particularly threatening or humiliating circumstances." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1255 (10th Cir. 2021) (citing *Morris v. City of Colo. Springs*, 666 F.3d 654, 667 (10th Cir. 2012)). Moreno has neither argued nor established that requiring her to obtain a doctor's note was "so severe as to alter the conditions of [her] employment and create an abusive working environment." *See Witt*, 136 F.3d at 1432 (quotation marks and citation omitted).

In addition to these incidents, Moreno alleged other conduct that she fails to connect to any discriminatory animus: McLain's email regarding Moreno's need for supplies; McLain's decision to reassign many of Moreno's cases; the failure to give Moreno information about district managers; ACO staff's calls to her after she quit; and the initial refusal to give her the resignation

letter and SF-8 form. In *Milam*, the Tenth Circuit found that although "'facially neutral abusive conduct can support a finding of [discriminatory] animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly . . . discriminatory conduct,' the totality of the circumstances [in that case did] not support such a finding. *Milam*, 729 F. App'x at 637–38 (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1224 (10th Cir. 2015) (internal quotation marks and brackets omitted)). The same is true here, particularly because these facially neutral allegations are attributed to different actors than those who behaved in an allegedly discriminatory manner. *Cf. Duncan v. Mgr., Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005) (examining allegations of discrimination "perpetrated by a completely different set of actors" in determining whether conduct was "part of the same hostile work environment").

The circumstances here are more analogous to those in *Payan*, where the plaintiff testified that his supervisor was angry and aggressive, called him a liar and incompetent, questioned him about appointments, "grilled" him about work issues, postponed an evaluation, refused him help, and "generally tr[ied] to ruin [his] career." *Payan*, 905 F.3d at 1171. The plaintiff submitted declarations from coworkers to show that during conference calls, the same supervisor "was disrespectful, critical, condescending, and abusive" to plaintiff, emphasized his poor performance, and treated him worse than any other employee on the calls. *See id.* at 1171–72. The Tenth Circuit found that the allegations neither rose "to the level of 'discriminatory intimidation, ridicule, and insult'" nor were "objectively sufficient to create the required pervasively hostile and abusive working environment." *Id.* Similarly, here, while Moreno may have described conduct that was "disrespectful, critical, condescending, and abusive[,]" and the request for a doctor's note was

inarguably improper, Moreno's allegations are insufficient to show an actionable level of discriminatory intimidation that translates to a hostile or abusive work environment. *See id.*

In sum, Moreno fails to establish that any reasonable jury could find the allegations here are sufficiently severe to constitute a hostile work environment. Accordingly, I recommend the Court dismiss this claim with prejudice.

## IV.    Moreno's constructive discharge claim fails.

Under Title VII, "[a] constructive discharge occurs only 'when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign.'" *Fischer v. Forestwood Co.*, 525 F.3d 972, 980 (10th Cir. 2008) (quoting *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004)). The standard to prove a constructive claim is more demanding than to prove a hostile work environment claim, "[t]hus, a constructive discharge 'can be regarded as an aggravated case of . . . hostile work environment.'" *Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1121 (D.N.M. 2011) (quoting *Hall v. U.S. Dep't of Lab., Admin. Rev. Bd.*, 476 F.3d 847, 851 (10th Cir. 2007)).

Defendant argues that Moreno has not adduced evidence to establish she was subjected to an environment that led to a constructive discharge. (Doc. 88 at 21.) I agree. "The question is not whether working conditions at the facility were difficult or unpleasant." *Exum*, 389 F.3d at 1135 (quotation and citation omitted). Rather, Moreno must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *See Hall*, 476 F.3d at 851 (quotation omitted). For the same reasons outlined above regarding the hostile work environment claim, Moreno fails to show that her employment conditions were altered or that she was subjected to an abusive working environment. Thus, I recommend the Court dismiss

this claim with prejudice.

**V.    Moreno's retaliation claims fail.**

Under Title VII, an employer may not discriminate against an employee "because [she] has opposed any practice made an unlawful employment practice by [Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3. Moreno alleges in Count III that she was retaliated against when McLain treated her disrespectfully, when McLain reduced her assignments, when USCB staff did not give her contact information for the regional office, and when office staff denied her access to a copy of her resignation letter and an SF-8 form. (*See* Doc. 61 at 3.) Moreno offers no evidence to show that any conduct was motivated by discrimination, thus, the undersigned examines her claim under the *McDonnell Douglas* burden shifting framework. *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007); *see also McDonnell Douglas Corp.*, 411 U.S. at 802–04. To state a *prima facie* case of retaliation, Moreno must demonstrate "that (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) a causal nexus exists between her opposition and the employer's adverse action." *Montes*, 497 F.3d at 1176 (citations omitted).

Defendant first argues that any claim based on McLain treating Moreno disrespectfully fails because Moreno cannot show she suffered an adverse action. (Doc. 88 at 22.) Moreno alleges that when she asked McLain for more supplies, McLain was "angry" and "disrespectful" in her emailed response. (*See* Doc. 88-C at 2.) Having reviewed the email exchange (*see* Doc. 88-J-1 at 1), it is clear that McLain's response did not rise to the level of an adverse employment action, as it did not "cause[] a significant change in employment status or benefits." *See Brown v. Austin*, 13 F.4th 1079, 1090 (10th Cir. 2021) (citation omitted).

The same is true of Moreno's allegation regarding USCB staff's alleged refusal to give her contact information for the regional office or the later denial of access to her resignation letter and SF-8 form. (*See* Doc. 61 at 3.) Such conduct amounts to nothing more than "a mere inconvenience[,]" which does not qualify as an adverse employment action. *See Hillig*, 381 F.3d at 1031.

Finally, Defendant argues that even assuming Moreno has established a prima facie claim for retaliation based on McLain's reduction of her work assignments, there is "a legitimate non-retaliatory explanation for" McLain's decision. (Doc. 88 at 24 (citing *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999)).) It was McLain's responsibility to reassign cases if an Enumerator was not working quickly enough. (*See* Doc. 88-J at 1.) McLain reviewed Moreno's work and determined that she had "only completed one assignment since [USCB] resumed operations." (*See id.*) She "believed Ms. Moreno was not working her cases quickly enough" and consequently, she reassigned most of Moreno's cases. (*See id.*) McLain testified that her "decision was not motivated [by] Ms. Moreno's claims of harassment involving Ms. Shanklin." (*Id.*)

Defendant has met its burden to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). Accordingly, Moreno is required to show that Defendant's "asserted reasons for the adverse action are pretextual." *See id.* (citation omitted). Moreno offers no evidence or argument on the issue of pretext, and thus she fails to meet her burden. (*See* Doc. 93.)

Moreno's retaliation claims do not withstand summary judgment and should be dismissed with prejudice.

## VI.    Conclusion

Moreno fails to cite to any record evidence or "set forth specific facts showing that there is a genuine issue for trial" on her claims. *See Applied Genetics Int'l Inc.*, 912 F.2d at 1241 (citing *Celotex*, 477 U.S. at 324); *see also* Fed. R. Civ. P. 56(c)(1)(A). Even construing her pleadings liberally and drawing all inferences in her favor, Moreno clearly fails to identify evidence that would require submission of her claims to a jury. *See, e.g.*, *Fischer*, 525 F.3d at 978. Accordingly, I recommend granting Defendant's motion as follows:

Discrimination Claims: Moreno failed to exhaust her administrative remedies with respect to the doctor's note incident, and I recommend the Court dismiss this claim without prejudice. Moreno fails to establish a prima facie claim of discrimination for the remaining incidents because she did not demonstrate an adverse employment action. I recommend the Court dismiss these claims with prejudice.

Hostile Work Environment Claim: Even considering all the incidents alleged in Moreno's First Amended Complaint, she fails to prove the conduct was severe or pervasive enough to constitute a hostile work environment. I recommend the Court dismiss this claim with prejudice.

Constructive Discharge Claim: Moreno fails to show her employment conditions were altered or that she was subjected to an abusive working environment, and I recommend the Court dismiss this claim with prejudice.

Retaliation Claims: For all but one of her retaliation claims, Moreno fails to prove an adverse employment action and thus fails to establish a prima facie claim of retaliation. For the remaining claim based on McLain's reduction of her assignments, Moreno fails to demonstrate pretext. I recommend the Court dismiss all retaliation claims with prejudice.

**IT IS HEREBY RECOMMENDED** that the Court **GRANT** Defendant's Motion for

Summary Judgment (Doc. 88) and **DISMISS** Moreno's lawsuit as outlined in this PFRD.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE